IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ARMSTRONG COUNTY MEMORIAL
HOSPITAL,

          Plaintiff,

          v.

PENNSYLVANIA ASSOCIATION OF
STAFF NURSES & ALLIED
PROFESSIONALS,

          Defendant.

18cv0048
ELECTRONICALLY FILED

**<u>Memorandum Opinion on Cross-Motions for Summary Judgment</u>**

**I.    Introduction**

This is an action for vacatur of an arbitration award filed by Armstrong County Memorial Hospital ("Plaintiff"). The Pennsylvania Association of Staff Nurses & Allied Professionals ("Defendant") filed a Counterclaim to enforce the arbitration award. The crux of this dispute centers around a relatively narrow issue, whether Section 10.3 (and other sections including Section 10.5) of the parties' Collective Bargaining Agreement (CBA) mandates that hours worked by a full-time nurse at the Armstrong County Memorial Hospital on a contractual holiday are to be counted toward the 40-hour threshold for weekly overtime calculations. The arbitrator found in favor of Defendant, who filed a grievance on behalf of its member. The parties have filed Cross-Motions for Summary Judgment, and this issue is now ripe for disposition. Given the deferential standard of review and the well-reasoned Decision of the Arbitrator, the Court will enforce the arbitration award in this case, because the award is rationally based upon and draws its essence from the language of the CBA, and the arbitrator did

1

not exceed his jurisdiction. Accordingly, Plaintiff's Motion for Summary Judgment will be DENIED (doc. 18); and, Defendant's Motion for Summary Judgment will be GRANTED (doc. 15).

## II.     Procedural History/Factual Background

### A. Procedural History

Plaintiff and Defendant are parties to a CBA that contains a grievance procedure wherein they agreed to final, binding arbitration under Article 14 of the CBA. Article 14 is a multi-step process for the resolution of disputes between the parties related to wages, hours, or other terms of employment. This process culminates in an arbitration before an impartial arbitrator. On February 2, 107, Defendant filed a grievance on behalf of its member, Amy Mundy (Ms. Mundy), a registered nurse at the Hospital, claiming that Plaintiff violated the CBA by not paying Mundy the appropriate amount of overtime for the week of the Christmas holiday in 2016. Doc. 17-6. Plaintiff denied the grievance on February 27, 2017. Doc. 17-7.

On October 26, 2017, an arbitration hearing was held before Arbitrator Matthew M. Franckiewicz. On December 12, 2017, the Arbitrator issue a comprehensive 12-page decision at the conclusion of which he sustained Defendant's grievance, finding in favor of Ms. Mundy. The Arbitrator found that Section 10.3 of the CBA mandates that the hours worked on contractual holidays are to be counted toward the 40-hour threshold for weekly overtime calculations. Additionally, contrary to the arguments of Plaintiff, the Arbitrator further concluded that when an employee works on a holiday, counting the holiday pay (but not the actual hours worked on the holiday) does not constitute "pyramiding and that no practice to the contrary has been established." Doc. 17-5 at p. 11. The Arbitrator therefore awarded Ms. Mundy 8 hours of overtime pay for the week of Christmas, 2016.

2

On January 1, 2018, Plaintiff filed a Two-Count Complaint and Motion to Vacate the Arbitration Award pursuant to LRMA Section 201, 29 U.S.C. Section 185, and 9 U.S.C. Section 10, arguing that the Arbitrator exceeded his jurisdiction by issuing an award that fails to draw its essence from the CBA. [Doc. 1](). Defendant filed an Answer and Counterclaim asking this Court to enforce the Arbitration Award. [Doc. 6](). Pending are the Parties' Cross-Motions for Summary Judgment ([doc. 15]() and [doc. 18]()).

### B. Undisputed Facts

The undisputed facts are as follows. Although Ms. Mundy typically worked three 12-hour shifts per week, during the week of Christmas, 2016, she had the following shifts:

On Sunday, December 25, 2016, Ms. Mundy worked from 3:00 p.m. to 7:00 a.m. for a total of 16.2 hours. The Christmas holiday is treated as beginning at 11:00 p.m. on December 24th and ending at 11:00 p.m. on December 25th. Ms. Mundy was paid 8 hours of holiday time (3:00 p.m -11:00 p.m.), 4 hours of regular time, and 4.2 hours of overtime for the hours she spent working on December 25, 2016.

On Monday, December 26, 2016, Ms. Mundy worked from 7:00 p.m. to 7:00 a.m. for a total of 12 hours. Ms. Mundy was paid 12 hours of regular pay for the hours she spent working on December 26, 2016.

On Tuesday, December 27, 2016, Ms. Mundy worked from 7:00 p.m. to 7:00 a.m. for a total of 12 hours. Ms. Mundy was paid 12 hours of regular pay for the hours she spent working on December 27, 2016.

On Thursday, December 29, 2016, Mundy worked from 7:00 p.m. to 7:00 a.m. for a total of 12 hours. Ms. Mundy was paid 8 hours of regular pay and 4 hours of overtime pay for the hours she spent working on December 29, 2016.

Defendant, on behalf of Ms. Mundy, then filed a grievance arguing that Plaintiff failed to count the 8 hours of holiday time Ms. Mundy was paid on Christmas for purposes of overtime, in violation of Section 10.3 of the CBA. Plaintiff denied the grievance and took the position that paying Ms. Mundy for 8 hours of holiday time on Christmas and counting the same hours for purposes of overtime constitutes pyramiding in violation of Section 10.5 of the CBA.

**C. Applicable Sections of the CBA**

Section 10.3 of the CBA states:

> Overtime shall normally be paid at a rate of time and one-half after 40 hours worked in any workweek, or for any hours worked beyond the scheduled shift as long as the shift is eight hours or more. "Hours worked" includes any vacation time scheduled during the workweek. New Year's[,] Memorial Day, Fourth of July, Labor Day, Thanksgiving, and **Christmas are also counted as hours worked for the purposes of overtime. (emphasis added).** "Scheduled shift" shall be defined as the shift listed in the work schedule posted pursuant to Section 10.10 of this Article, and any change mutually agreed upon prior to the day of the hours being worked. Voluntary overtime within a department will be distributed as equally as possible among staff RNs desiring such overtime. In the case of CRNAs, such overtime is offered to the most senior CRNA. All overtime must be authorized in advance by a supervisor in the Nurse's department or unit, unless an emergency arise.

Section 10.5 of the CBA states:

> Nothing contained herein shall be construed to require overtime pay more than once for the same hours worked, or pyramiding of overtime or premium pay of any kind.

Section 18.3 of the CBA states:

> Holiday pay for full-time Nurses will be eight hours pay at the rate of pay for the Nurse's designated position. Regular part-time Nurses who work the holidays listed above will receive holiday pay, except that a Nurse scheduled to work a 12-hour holiday and who works the scheduled hours will receive 12 hours holiday pay.

Section 18.4 of the CBA states:

> **Nurses who are scheduled and who work on a holiday**, with the exception of a birthday, **will be paid time and one-half for all hours worked and will receive holiday pay as well**. (emphasis added). Birthday shall be taken off on the Nurse's birthday, if mutually agreed, or within the month in which the birthday falls with approval of the supervisor and dependent upon staffing needs.

Doc. 17-5.

### III. Case Law

Vacatur of an arbitration award is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Generally, the Federal Arbitration Act, "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Verve Communications Pvt. Ltd. v. Software Int'l, Inc.,* CIV. 11-1280 FLW, 2011 WL 5508636 *4 (D.N.J. Nov. 9, 2011) (*citing Ario v. Underwriting Memb. of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 288 (3d Cir. 2010)). The FAA was "designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Id.* The statute provides four grounds for vacatur:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-
>
> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The United States Supreme Court has instructed courts to exercise a narrow and deferential role in reviewing arbitration awards arising out of labor disputes. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960); *United Paperworks Int'l. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Where parties have agreed to submit to arbitration under the FAA, a party may "ask the court to review the arbitrator's decision, but the court will set that decision aside only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942 (1995). Therefore, as the United States Court of Appeals for the Third Circuit recently observed, the courts apply "an extremely deferential standard, the application of which is generally to affirm easily the arbitration award." *Brockway Mould, Inc. v United Steel, Paper, and Forestry, Rubber, Mfg. Energy, Allied Industrial and Serv. Workers Int'l Union* ("Brockway Mould"), 655 Fed. Appx. 159, 162 (3d Cir. 2016); *See also, Pennsylvania Power Company v. Local Union No. 272 of the International Brotherhood of Electrical Workers, AFL-CIO*, 276 F.3d 174 (3d Cir. 2001).

According to the United States Court of Appeals for the Third Circuit, where a party seeks vacatur on the basis that the arbitrator "exceeded [his or her] powers" pursuant to 9 U.S.C. § 10(a)(4), the Court must "'determine if the form of the arbitrator[']s award can be rationally derived either from the agreement between the parties or from the parties['] submissions to the arbitrator.'" *Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account*, 618 F.3d 277, 295 (3d Cir. 2010) (quoting *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reins. Co.*, 868 F.2d 52, 56 (3d Cir. 1989)). Furthermore, an arbitration award cannot be

6

overturned on this ground unless it is "'completely irrational.'" *Id.* As set forth by the Court of Appeals for the Third Circuit, this irrationality standard of review is quite deferential, as "'there must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award.'" *Ario*, 618 F.3d at 295-96 (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).

Even under this deferential approach, the courts will not simply "rubber stamp" the interpretations and decisions of an arbitrator. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Schwarzwaelder*, 11-2605, 2012 WL 3264361 *4 (3d Cir. Aug. 13, 2012), reh'g granted (Oct. 16, 2012) (*citing Matteson v. Ryder Sys. Inc., 99 F.3d 108*, 113 (3d Cir. 1996)). Instead, the arbitrator is afforded "a strong presumption of correctness" because the parties to an arbitration agreement have bargained for their dispute to be resolved by the arbitrators rather than by the courts. *Id.* (*citing Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004)).

Again, the only role of the courts is to ask "whether the parties . . . got what they bargained for, namely an arbitrator who would first provide an interpretation of the contract that was rationally based on the language of the agreement, and second *would produce a rational award.*" *Id.* (*citing Brentwood Med. Assocs. v. United Mine Workers of Am.,* 396 F.3d 237, 242 (3d Cir. 2005)) (emphasis added). The role of this Court, therefore, is to determine whether the arbitrator's award "draws its essence" from the parties' collective bargaining agreement. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.* 484 U.S. 29, 36 (1987). An award draws its essence from the CBA if its interpretation can *in any rational way* be derived from the agreement. In other words, an arbitration award will be vacated if there is a "manifest disregard" of the agreement. *Ludwig Harnold Mtg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969).

7

**IV.     Discussion**

Consistent with the above case law, the Court has reviewed the decision of the Arbitrator and notes the following analysis with regard to Sections 10.3 and 10.5.  The Arbitrator stated that examining the plain language of the CBA, contractual holidays, including Christmas, are "counted as hours worked for the purpose of overtime."  He then rejected Plaintiff's contention that the non-pyramiding provision of the CBA at Section 10.5 nullified Section 10.3, while noting that "the provisions of a [CBA] should be harmonized so as to give effect to all of them," and he states "one section should not be read as nullifying another.  I am therefore reluctant to read Section 10.5 as taking away what Section 10.3 explicitly gives." Doc. 17-5 at 10.  The Arbitrated astutely reasoned:

> Some but not all arbitrators consider the crediting of any time paid at a premium rate toward the 40-hour floor for weekly overtime as a form of pyramiding.  But the 8 hours of holiday pay for Christmas are paid at straight time, as distinguished from the hours actually worked on Christmas, which are paid at a premium rate.  Adding straight time hours on Christmas to straight time hours worked on other days that week does not constitute pyramiding in the sense of counting hours paid at a premium rate toward the threshold for a weekly overtime premium.
> Nor does crediting of the 8 hours of holiday pay toward weekly overtime amount to pyramiding as a form of double counting of hours.  The Union does not seek to count both the hours actually worked and the holiday pay hours, only the latter.  So counting only one set of hours, paid at straight time, would not violate the no pyramiding provision of the [CBA].

Doc. 17-5 at 10-11.

The Court finds that the above interpretation by the Arbitrator is rationally derived from Section 10.3 of the CBA, which spells out that hours paid for contractual holidays, including Christmas, are counted for purposes of overtime.  Additionally, although not specifically addressed in detail in the Arbitrator's decision, this Court finds further justification for the

position of the Arbitrator in the language of Section 18.4 which states that "[n]urses who are scheduled and who work on a holiday . . . will be paid time and one-half for all hours worked and will receive holiday pay as well." This language explicitly explains that nurses will receive holiday pay as well as time and a half when they work on a holiday. The plain language of Section 10.3 (along with Section 18.4) more than adequately supports the conclusion reached by the Arbitrator, is rationally derived from the language of the CBA, and the decision of the Arbitrator draws its essence from the agreed upon language of the CBA.

Likewise, as for Plaintiff's allegations that the Arbitrator exceeded his jurisdiction "[b]y ignoring the mandate of Section 10.5 of the CBA that pay not be made more than once for the same hours," the Court is similarly unconvinced. An arbitrator exceeds his or her power when his or her award cannot be rationally derived from the agreement between the parties, from the parties' submission to the arbitrator or when the award is completely irrational. *Ario v. Underwriting members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 287 (3d Cir. 2010); *See also Giant Eagle, Inc. v. United Food & Commercial Workers Union, Local 23*, 2012 WL 5905621 (W.D. Pa. November 26, 2012)(Schwab, J.). In the decision, the Arbitrator devoted significant time to an in-depth analysis of the concept of pyramiding, including lengthy discussion of at least 12 cases relating to the range of views on pyramiding (from the most to least restrictive), and he noted the lack of consensus among arbitrators as to the meaning of the word. Ultimately, the Arbitrator found that Defendant "[did] not seek to count both the hours actually worked and the holiday pay hours, only the latter. So counting only one set of hours, paid at straight time, would not violate the no pyramiding provision of the [CBA]." Doc. 17-5. This Court declines Plaintiff's invitation to effectively nullify Section 10.3 in favor

of the language of Section 10.5, which is not as straight forward as Plaintiff would invite this Court to find.

In closing, this Court recognizes that the Arbitrator's Decision is afforded "a strong presumption of correctness," and the only role of the Court is to determine "whether the parties . . . got what they bargained for, namely an arbitrator who would first provide an interpretation of the contract that was rationally based on the language of the agreement, and second would produce a rational award." *Schwarzwaelder*, at *4. The Court sees no reason to upend the findings of the Arbitrator in this instance because his findings were rationally derived from the language of the CBA and his award was rationally based on the CBA. Therefore, the Award will be enforced. Defendant's Motion for Summary Judgment ([doc. 15](doc. 15)) will be GRANTED and Plaintiff's Motion for Summary Judgment ([doc. 18](doc. 18)) will be DENIED. An appropriate Order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:    All ECF Registered Counsel of Record